# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK W. TRUDEAU, | CV F   02-5764 LJO SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING RESPONDENT'S MOTION TO DISMISS FOLLOWING REMAND FROM THE NINTH CIRCUIT COURT OF APPEALS |
| v. | |
| D. L. RUNNELS, Warden, | |
| Respondents. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is represented by Carolyn Phillips.

## BACKGROUND

Petitioner filed the instant petition for writ of habeas corpus on June 24, 2002.  On November 20, 2002, Respondent filed a motion to dismiss the petition as barred by the one-year statute of limitations.  On March 18, 2003, the undersigned issued a Report and Recommendation that Respondent's motion to dismiss be granted.  On May 7, 2003, a Supplemental Report and Recommendation was issued addressing Petitioner's opposition, which was misplaced and not docketed prior to the issuance of the initial Report and Recommendation. On August 29, 2003, the Report and Recommendation was adopted in full and the case was dismissed.

Petitioner filed a notice of appeal with the Ninth Circuit Court of Appeals.  On January 13, 2005, the Ninth Circuit vacated and remanded the action to this Court for further

development of the record.  On April 5, 2005, the Court ordered the Office of the Federal Defender to represent Petitioner.  The Court further directed Respondent to file a response addressing Petitioner's contention that he is entitled to equitable tolling.  Respondent filed his response on May 5, 2005.  Petitioner filed his opposition on October 5, 2005, and Respondent filed a reply on October 14, 2005.

## DISCUSSION

A. <u>   Background</u>

<u>         </u>Petitioner was sentenced to a term of 25 years to life for a "third strike" violation of California Health and Safety Code section 11377, plus a one-year enhancement for a violation of California Penal Code section 667.5, subdivision (b) on June 3, 1997.

Petitioner filed a notice of appeal.  On August 23, 1999, the California Court of Appeal, Fifth Appellate District, modified the judgment by striking the one-year enhancement, but affirmed in all other respects.  A petition for rehearing was denied on September 9, 1999.  A petition for review was filed in the California Supreme Court and denied on November 10, 1999.  A petition for writ of certiorari in the United States Supreme Court was denied on April 17, 2000.  The time to seek direct review ended upon denial of the writ of certiorari.  <u>Geisberg v. Cockrell</u>, 288 F.3d 268, 271 (5th Cir. 2002); <u>United States v. Thomas</u>, 203 F.2d 350, 356 (5th Cir. 2000).

Petitioner filed three post-conviction collateral challenges to his conviction, all petitions for writ of habeas corpus.  The first petition was filed in the Fresno County Superior Court on May 1, 2001, and denied on May 7, 2001.  The second petition was filed in the California Court of Appeal, Fifth Appellate District, and denied on November 8, 2001.  The third petition was filed in the California Supreme Court on January 2, 2002, and denied on May 1, 2002.

B. <u>   Limitation Period for Filing a Petition for Writ of Habeas Corpus</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118

S.Ct. 586 (1997). The instant petition was filed on May 29, 2003, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running on the date that the petitioner's direct review became final. Here, the one-year limitation period began to run on April 18, 2000, the day following the United States Supreme Court denied certiorari. Thus, Petitioner had until April 17, 2001, to file his federal petition. As noted by the Ninth Circuit Court of Appeals, Petitioner filed his first state habeas petition, seven days after the statute of limitations expired. As previously indicated, this case was remanded by the Ninth Circuit for further factual development of Petitioner's claim for equitable tolling. Each of Petitioner's claims will be addressed in turn.

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

3

stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), *citing* Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), *cert denied*, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993).

Petitioner claims the following grounds for equitable tolling: (1) Petitioner's appointed attorney never informed him of the date the Supreme Court denied his petition for certiorari, and delayed until May 16, 2000 to inform him that the petition was denied; (2) Petitioner did not receive a copy of his transcripts until September 7, 2000; (3) prison lockdowns and limited library access prevented him from timely filing; and (4) prison officials delayed delivery of legal materials (case law, rules of court, etc.) sent to him by his mother. (Supplemental Report at 2-5; Petitioner's Opposition of 10/05/05, at 3-7.)

       1.   Counsel's Failure to Inform of Date Supreme Court Denied Petition for Certiorari

First, with regard to Petitioner's claim that limitations period should be equitably tolled based on counsel's failure to inform him of the date the Supreme Court denied the petition, it is without merit. The Court finds that appellate counsel's negligence alone does not constitute an extraordinary circumstance sufficient to justify equitable tolling. In correspondence dated May 16, 2000, appellate counsel stated he would "prepare a draft petition together with an application to proceed in forma pauperis for your review." (See Exhibit A to Court Doc. No. 14.) On July 31, 2000, in response to Petitioner's correspondence of May 30, 2000, appellate counsel advised Petitioner that he was unable to assist Petitioner with his state habeas petition. Counsel further advised: "I suggest, however, that you get it on file as soon as possible. For your assistance I have enclosed a copy of the Judicial Council Form." (See Exhibit B to Court Doc. 14.) Although Petitioner's appellate attorney did not inform him of the date the Supreme Court denied the petition for certiorari and subsequently indicated he could not file the state petition, he did inform Petitioner to file a state habeas petition "as soon as possible." (Id.) Assuming

4

Petitioner received counsel's letter the following week, approximately 254 days[1] remained of the one-year statutory period. Nevertheless, Petitioner did not heed counsel's warnings and failed to file his petition "as soon as possible." While it is unfortunate that appellate counsel failed to inform Petitioner of the date the petition for certiorari was denied and failed to file a state petition on his behalf, this alone, does not constitute sufficient grounds to equitably toll the limitation period. Certainly if counsel's miscalculation of the statute of limitations deadline is not an "extraordinary" circumstance warranting equitable tolling, the fact that counsel in this case subsequently informed Petitioner that he could not file the state petition, is not an extraordinary circumstances, especially since Petitioner still had 254 days remaining on the limitations period in which to file the petition. This simply is not an extraordinary circumstance that would have made it impossible for Petitioner to timely file his petition.

The instant case is factually distinguishable from Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003). There, an attorney was hired by the petitioner's mother to file a habeas petition on his behalf. Counsel did not file the petition allowing the statutory period to pass, and despite requests to do so counsel failed to return the case file until months after the limitations period had expired. Spitsyn, 345 F.3d at 798. The court found counsel's conduct was more than mere ordinary negligence stating it was "sufficiently egregious" warranting equitable tolling. Id. at 801. Here, Petitioner has alleged no facts demonstrating that counsel impeded or prevented a timely petition from being filed. To the contrary, although during but well before the limitations period expired, counsel advised Petitioner he could not file his state petition and returned the transcripts. Thus, counsel neither allowed the statutory deadline to pass nor failed to return the records beyond the deadline.

Further, Petitioner's illiteracy and ignorance of the law is insufficient to warrant equitable tolling. As Respondent argues, Petitioner could have determined the deadline by consulting the law. See Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (A petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling); see

---

[1] 4/18/00 - 8/7/00 = 111 days. 111 - 365 = 254.

5

also, e.g., Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir.1986) (pro se prisoner's illiteracy and lack of knowledge of law unfortunate but insufficient to establish cause); Kibler v. Walters, 220 F.3d 1151, 1153 (9th Cir. 2000) (lack of knowledge of state law not cause); See, also, Marsh v. Soares, 223 F.2d 1217, 1220 (10th Cir. 2000); Fisher v. Johnson, 174 F.3d 710 (5th Cir. 1999); Rose v. Dole, 945 F.2d 1331, 1335 (6th Cir.1991).

### 2. Lack of Copy of Transcripts

Second, with regard to Petitioner's claim that the limitation period should be equitably tolled based on the fact that he did not receive a copy of the transcripts until September 7, 2000, this too is unpersuasive. As the Eighth Circuit Court of Appeals has stated: "[W]e understand petitioner's desire to have a transcript before filing for post-conviction relief. Possession of a transcript, however, is not a condition precedent to the filing of such proceedings. A petition seeking collateral relief could have been filed, following which, if necessary for decision of the issues raised, the court could have ordered production of the transcript." Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001); see also Lloyd v. VanNatta, 296 F.3d 630, 634 (7th Cir. 2002); Jihad v. Hvass, 267 F.3d 803, 806 (8th Cir. 2001); United States v. Van Poyck, 980 F.Supp. 1108, 1110-11 (C.D. Cal. 1997) (equitable tolling not granted where there was no explanation why transcripts were needed to file habeas petition.) As such, Petitioner's claim is nothing more than a vague and conclusory allegation. Moreover, Petitioner was present during the trial court proceedings obviating the need for the transcripts as he was obviously aware of the alleged errors that occurred.

In United States v. Battles, 362 F.3d 1195, 1198 & n.5 (9th Cir. 2004), the Ninth Circuit relying on its earlier opinion in Ford v. Hubbard, 330 F.3d 1086 (9th Cir. 2003), reversed on other grounds in Pliler v. Ford, 542 U.S. 1099 (2004), held that equitable tolling may be available where counsel has failed to promptly provide the petitioner with a copy of the case file causing a delay in the filing of the petition. Here, unlike in Battles and Ford, Petitioner concedes that he received the entire copy of his transcripts on September 7, 2000, which was more than six months prior to the statutory deadline.

Petitioner's reliance on Lott v. Mueller, 304 F.3d 918 (9th Cir. 2002), fairs no better. In

6

Lott, the Ninth Circuit held that, if established, denying a prisoner access to his legal files for a period of eighty-two days would justify equitable tolling. Lott, 304 F.3d at 924. The Court noted, however, that a "temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional violation." Id. at 925. Petitioner, here, was not denied access to his legal files. Thus, Lott is inapplicable. In addition, Petitioner received a copy of his entire transcripts on September 7, 2000, with 222 days remaining on the statutory period.

As Respondent correctly argues, although Petitioner may have desired possession of the transcripts for a period longer than he actually enjoyed, Petitioner has not explained why he needed these transcripts in order to file his federal petition, particularly in light of the fact that he received them on September 7, 2000, while 222[2] days remained on the statutory clock. In addition and although not dispositive, Petitioner does not identify any facts at issue that were not readily known to him following his trial and direct review.

    3.  Prison Lockdowns

Third, with regard to Petitioner's claim that prison lockdowns prevented his timely filing, it too is without merit and does not warrant equitable tolling.

Petitioner submits evidence of certain periods of time when Facility B, at High Desert Prison, where Petitioner was housed, was on lockdown beginning in October 2000 through May of 2001. (See Petitioner's Exhibits EE-2 - EE-8.) Exhibits EE-2 and EE-3 indicate that from October 26 through November 2, 2000, and November 9 through November 15, 2000, respectively, "inmates assigned PLU status as approved by the Library Technical Assistant will be permitted to attend [the law library] under escort (unrestrained)." Exhibits EE-4 through EE-6 indicate that from December 1 through December 7, 2000, January 18 through January 24, 2001, and February 1 through February 7, 2001, respectively, "inmates assigned as PLU or GLU status as approved by the Library Technical Assistant will be permitted to attend [the law library] under escort (unrestrained)." Exhibits EE-7 and EE-8 indicate that from March 12 through March 18, 2001, and May 23 through May 31, 2001, "PLU/GLU ALL DUCATS HONORED."

---

[2] 4/18/00 - 9/07/00 = 143 days.  143 - 365 = 222.

1    Respondent submits the Operations Manual at High Desert State Prison which indicates
2 that "PLU" means preferred library user. A "PLU" inmate has a verified, court-ordered or
3 procedural deadline to file a petition, brief or motion within thirty days. "GLU" refers to a
4 general library user. A "GLU" inmate has a pending case, yet no impending court deadline, or is
5 preparing legal documents or performing legal research. (See Court Doc. 60; Respondent's
6 Lodged Doc. No. 2, at 6.)  Even during a lockdown, inmates may request to use the library. The
7 facility keeps records of such requests, including records of an inmate's refusal to make use of
8 library time. (Id., at 3.)

9    As Respondent submits, Petitioner was, at a minimum, a GLU user, and Petitioner fails to
10 demonstrate why his AEDPA-imposed deadline would not qualify him for this treatment or,
11 more importantly, that he ever attempted to obtain, but was denied, access to the law library.
12 Petitioner merely makes the conclusory allegation that because the facility was intermittently on
13 lockdown status during portions of the limitations period, he is entitled to equitable tolling.  Not
14 so.  While Petitioner has undoubtedly demonstrated that there were frequent lockdowns, they
15 were intermittent and generally lasted for only six days.  In addition, the duration of the
16 lockdowns during the running of the limitations period amounted to only 37 days (beginning
17 October 26, 2000 to April 17, 2001 - date statute of limitations expired).[3]  Furthermore,
18 Petitioner makes no claim that he requested and was denied access to the law library.  As
19 Petitioner has simply failed to demonstrate a "but-for" connection between the lockdowns and
20 the untimely filing, and equitable tolling is not warranted. Allen v. Lewis, 255 F.3d 798, 801 (9th
21 Cir. 2001), rehearing en banc granted on other grounds 295 F.3d 1046 (9th Cir. 2002) (the Ninth
22 Circuit stated that petitioner must show that the alleged extraordinary circumstances were the
23 actual cause of his being untimely.).  Nor has Petitioner demonstrated that he pursued his rights
24 with due diligence.  Petitioner makes no showing of how he attempted to pursue his claims in a
25 timely manner and was impeded by the restrictions on the law library.  Furthermore, although
26 Petitioner appears to take issue with the fact that restrictions were placed on access to the law

---

[3] Although there was an additional lockdown from May 23, 2001 to May 31, 2001, this was after the statute of limitations had expired on April 17, 2001.

8

1  library, prison officials are permitted to regulate the time, place, and manner in which library
2  facilities are used so that all inmates can access the law library in a secure and orderly manner.
3  Lindquist v. Id. State Bd. Of Corrs., 776 F.2d 851, 858 (9th Cir. 1985). Additionally, to the extent
4  Petitioner contends that the law library was not staffed with sufficient legal assistance, the claim
5  is without merit. Petitioner is not entitled to representation during post-conviction proceedings.
6  See Miranda v. Castro, 292 F.3d 1063, 1067-68 (9th Cir. 2002) (denying equitable tolling for
7  attorney negligence because there is no right to effective assistance of counsel for post-conviction
8  relief.) Furthermore, Petitioner is only entitled to a reasonably adequate opportunity to present
9  his claims to the courts, see Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996), not to
10 the assistance of someone trained in the law. Id. at 356, 360.

        4.  <u>Return of Material Mailed by Petitioner's Mother</u>

Petitioner contends that he is entitled to equitable tolling because "prison authorities disapproved as 'excessive pre-printed materials' an envelope containing legal materials" sent by his mother.

In support of this contention, Petitioner provides the declaration of Kathryn Drewes. (Court Doc. 14, Exhibit H.) Ms. Drewes declared before a certified notary that on October 24, 2000, she mailed to Petitioner an envelope marked "Legal Materials" which contained printed materials "pertaining to case citations, case opinions, rules of court, both state and federal, and materials in which the petitioner could receive instruction on reading and applying the above materials." (Id.) However, on November 10, 2000, she received the mailing back from the prison and was informed that the items were disapproved as "excessive pre-printed materials."

The Court finds this circumstance insufficient to justify equitable tolling. The routine day-to-day restrictions are circumstances common to all prisoners and as such, are not "extraordinary" in the sense that equitable tolling is warranted. There is no evidence that Petitioner could not obtain the same materials from the prison law library, even with limited access for lockdowns. Thus, Petitioner's assertion amounts to nothing more than a conclusory allegation. Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). As Respondent argues, Petitioner fails to explain how the denial of those materials prevented him from timely filing his habeas

petition, particularly given that the materials requested in October 2000 were returned to Petitioner's mother in November 2000, with approximately five months of the limitations period remaining.

Although it is unfortunate that Petitioner missed the deadline by only seven days, this fact does not, however, justify equitable tolling. See Lattimore v. Dubois, 311 F.3d 46, 53-54 (1st Cir. 2002) (no equitable tolling where petition mailed one day late considering the time available to challenge conviction); Lookingbill v. Cockrell, 293 F.3d 256, 264 (5th Cir. 2002) ("We have consistently denied tolling even where the petition was only a few days late."); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000) (upholding dismissal of petition filed one day after limitations period expired); see also Turner v. Singletary, 46 F.Supp.2d 1238, 1240 (N.D. Fla. 1999); cf. United States v. Locke, 471 U.S. 84, 101 (1985) ("If 1-day late filings are acceptable, 10-day late filings might equally be acceptable, and so on . . . regardless of where the cutoff line is, some individuals will always fall just on the other side of it.").

In sum, after thoroughly considering all of Petitioner's claims for equitable tolling, Petitioner has simply failed to demonstrate that the "extraordinary circumstances" rather than a lack of due diligence were the but-for cause of the untimely filing. See Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005) (requiring a "causal connection" between the alleged extraordinary circumstances and the failure to file a timely petition), modified on other grounds by 447 F.3d 1165 (9th Cir. 2006), and the instant petition for writ of habeas corpus should be dismissed.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss the instant petition as time-barred by 28 U.S.C. § 2244(d)(1) and (2);

2. The instant petition for writ of habeas corpus is DISMISSED, with prejudice; and,

3. The Clerk of Court is directed to enter judgment, terminating this action.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

the Local Rules of Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 25, 2008**              /s/ Sandra M. Snyder
                                            UNITED STATES MAGISTRATE JUDGE